# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

№ 25-CV-5895 (RER) (TAM)

—————————————

### JIEYING PAN

VERSUS

### CITY OF NEW YORK

—————————

**MEMORANDUM & ORDER**

—————————

**RAMÓN E. REYES, JR., District Judge:**

*Pro se* plaintiff Jieying Pan filed this action against New York City, two of its agencies, and both identified and unidentified police officers and supervisors, alleging violations of 42 U.S.C. §§ 1983 and 1985 and various constitutional rights for incidents that occurred from 2020 to 2025 between herself, her landlord, and the NYPD. (ECF No. 1).

After carefully reviewing the record, and for the reasons set forth herein, the Court grants Plaintiff's request to proceed *in forma pauperis*[1] ("IFP") and dismisses Plaintiff's claims against The City of New York, Corporation Counsel, and the New York City Police Department without prejudice. Plaintiff claims as against Officers Luo and Livingston shall proceed.

---

[1] Plaintiff's IFP application is ambiguous. Plaintiff claims "gifts or inheritances" as the only source of income, but claims "$400,000 worth of property in my room." (ECF No. 2 at 1–2).

## BACKGROUND

The complaint consists of three submissions: a form complaint for violations of civil rights, with handwritten entries and addenda on pages interspersed with a handout from the Kings County Supreme Court (ECF No. 1 at 1-21); a typed addendum labeled "Jieying Pan – July Notice of Claims" (*Id.* at 22–29); and a separate typed complaint (*Id.* at 30–33). The allegations and the chronology of events are not clear. After carefully parsing the three submissions and considering them together, the Court understands Plaintiff to allege the following.

At some point Pan rented a room in a residence located at 666 57th Street in Brooklyn. (*Id.* at 29). The landlord is Guoduan Zhang or somebody in his family. (*Id.* at 22). The landlord's son, Eric Park Zhang, "may be a police officer," and the landlord's daughter, Mei Farrell, may be married to "Senior Sergeant Farrell," who may be a "senior police chief, who works in the police headquarters and is a senior supervisor." (*Id.* at 10, 12, 24, 29, 31, 33).

Plaintiff reported to unspecified entities or individuals, including the New York City Civilian Complaint Review Board ("CCRB"), that the dwelling had been illegally converted from a two-family home to an eight-family home and that there was a "money laundering business" and "illegal gambling companies in the basement." (*Id.* at 3, 4, 29, 30). According to Pan, her landlord and the landlord's family had police officers in the 72nd St. precinct "take care" of the family's illegal gambling company. (*Id.* at 33). Plaintiff alleges that she "believe[s] that someone was bribed to take money, so he helped the landlord to violate my civil rights and obstruct justice." (*Id.* at 33). In retaliation for her reports, the landlord and the landlord's family began a campaign of harassment in an

effort to get Plaintiff out of the unit without paying moving expenses. (*Id.* at 3, 22–24). Plaintiff's room was broken into, and her property was stolen or damaged. (*Id.* at 4, 6, 8, 21, 24, 29). Plaintiff alleges that "Senior Sergeant Farrell (and his wife, Mei Farrell) was the mastermind behind this, abusing their authority to severely obstruct judicial justice, violate human rights, and perpetrate anti-Asian hate crimes against me." (*Id.* at 31). She further alleges that her "tip-off was met with a frenzy of retaliation from their entire family, as well as from most of the cops at the 72nd Precinct in Brooklyn." (*Id.* at 33).

Pan provides few specific allegations. On July 6, 2022, Plaintiff was arrested at the 72nd Precinct "without a warrant." (*Id.* at 4, 14). Pan states: "I committed suicide in prison that night and was sent to the emergency room." (*Id*. at 14). On three unspecified occasions, she was involuntarily taken to the hospital "to check for mental problems" even though she "repeatedly stated that [she had] no problem." (*Id.* at 22, 24, 29). On August 22, 2023, during a period when the landlord had a protective order against her, Plaintiff was arrested by Officer Luo (ID 12820), and Luo's partner, "a Spanish female police officer" (*Id.* at 4). Plaintiff states: "Luo told me that he received orders from his superiors and had no choice but to break the law." (*Id.* at 6). This arrest led to a criminal complaint being filed under Docket CR-030880-23-KN. (*Id.* at 4).

On January 2, 2024, "pursuant to an access order, [Plaintiff] was allowed to enter her residence," and discovered that the outer gate had a new lock, that her room's door lock had been broken, that $10,000 worth of her personal possessions had been stolen, and that Guoduan Zhang was occupying her bed and leaving his belongings in her closet. (*Id.* at 22). Plaintiff reported "these illegal actions" to Officer Luo and Luo's partner, but they "refused to file a full and accurate report, declining to investigate further," and

"help[ed] a landlord cover up a crime." (*Id.* at 6, 22). Pan also had a protective order against the landlord's family. (*Id.* at 22–23). Pan moved back into the room on February 12, 2024, and the landlord's family "subjected [Plaintiff] to various forms of mental abuse and harassment, explicitly stating their intention to force her out illegally." (*Id.* at 22). On February 16, 2024, Plaintiff called 911 and "played a recording of the harassment for the responding police officer." (*Id.*) The police called an ambulance and "forced [Plaintiff] to go to the NYU emergency room, despite her protests that she felt fine, was not suicidal, and was taking her medication as prescribed." (*Id.*) On March 16, 2024, Officer Proscia (ID 29114) gave Plaintiff a police report after her door had been broken and her property stolen. (*Id.* at 8).

On April 20, 2024, the landlord's daughter called the police, falsely accusing Pan of cooking in her room. (*Id.* at 22–23). At that time, Officer Santelme (ID 21423) saw a black garbage bag on Plaintiff's window and failed to take any action, even though Plaintiff had a protective order against the landlord. (*Id.* at 8, 23). On April 22, 2024, and April 30, 2024, Yingying Chen banged on Pan's window, demanded rent payments, slandered her in front of neighbors, and made "obscene sexual gestures toward her." (*Id.* at 23). Plaintiff called 911, "but the police refused to come to the scene." (*Id.*) On April 24, 2024, Officer Sasso (ID 3183) saw that Plaintiff's window had been spray painted and did not take any action. (*Id.* at 8). On April 25, 2024, the landlord's daughter harassed Plaintiff with excessive noise. (*Id.*) Officer Vanderheide (ID 23164) failed to take any action when Plaintiff reported that she was being "harassed by noise from the landlord's daughter." (*Id.*) On May 5, 2024, and/or May 8, 2024, the food Plaintiff stored on her windowsill was deliberately contaminated with cigarette butts and human feces. (*Id.* at 8, 23, 25). Plaintiff

called 911, and a police officer (ID 18820) responded but "protected the landlord's crime" and "did not give [Plaintiff] any on-site report, making it impossible for [Plaintiff] to sue the landlord." (*Id.* at 8).

On May 8, 2024, Yingying Chen and Mei Farrell insulted and threatened Pan. (*Id.* at 24). Plaintiff called the police and "showed them a video of the earlier harassment by Yingying Chen. As a result, Chen was arrested by the police." (*Id.*) This caused further escalation of tensions in the residence until May 16, 2024, when Plaintiff and Mei Farrell had a physical altercation. (*Id.* at 24–25, 31). Mei Farrell pushed Plaintiff to the ground and pressed against her chest and throat. (*Id.* at 25). When the police arrived, they initially arrested Mei Farrell. (*Id.* at 26, 32). But then Mei Farrell "lied to the police" and called her husband, "the senior sheriff," after which "her husband gave the order" to an officer and "exploited his position" to frame Plaintiff. (*Id.* at 12, 26, 31–32). As a result, a "Spanish male" officer entered Plaintiff's room and "made a violent and illegal arrest of [Plaintiff]." (*Id.* at 32). Pan sustained injuries that later required hospitalization. (*Id.* at 12, 25–26, 31). Doctors took photographs of Plaintiff's injuries, yet the police report stated that Plaintiff was uninjured. (*Id.* at 12, 31). Plaintiff mentions criminal charges and civil claims against Farrell. (*Id.* at 12).

At 6 o'clock in the morning on May 18, 2024, police officers escorted Pan to her room, where she discovered that her driver's license, credit cards, and food stamps had been stolen. (*Id.* at 26–27, 31–32). Plaintifff asked the officers to document the theft, but they refused. (*Id.* at 26). Later, Pan's identification documents were used to buy guns, apply for government benefits, and defraud the government. (*Id.* at 32). The police repeatedly refused to take Plaintiff's report, help her recover the items, or investigate the

allegations. (*Id.* at 27–28, 32). Later on May 18, 2024, Plaintiff was "waiting for the police by the property pursuant to the May 18 Access order," when she was arrested, "allegedly for violating a protective order." (*Id.* at 12, 26, 32). Police Officer Livingston (ID 12987) may have been one of the arresting officers. (*Id.* at 32).

A judge issued an order permitting Pan to retrieve her belongings on June 4, 2024, but the police failed to assist her in effecting entry while Plaintiff "waited outside the building for eight hours, making several calls to 911." (*Id.* at 27). Again, on December 9, 2024, Plaintiff had a court order to enter the premises, but Officers Beg (ID 24025), Law (ID 16697), and Maynard (ID 3836) did not respond to Plaintiff's 911 calls until ten minutes before Plaintiff's time to enter expired. (*Id.* at 10, 32). Plaintiff states, "I called 911 but instead of protection investigation evidence collection and arrest of the criminal, I was chased away by the police and prevented from returning home." (*Id.*) "They deliberately and maliciously acted with the landlord to prevent me from entering my room to get something, because my room had been occupied by the landlord at that time, and they did not want me to film the video recording of the first crime scene. And the police at the scene are not willing to give me any inspection reports, because the landlord has been stealing and robbing my room. They're seriously obstructing justice. Against the order of a criminal court judge." (*Id.* at 32).

Plaintiff made multiple complaints about these incidents to the 72nd Precinct of the New York Police Department between September 24, 2020, and September 11, 2025. (*Id.* at 4, 6, 8, 22. 31). Some of the police reports were "incomplete and erroneous and . . . concealed the name of the landlord who maliciously harassed and intimidated [Plaintiff], making it impossible for [Plaintiff] to sue and obtain compensation." (*Id.* at 4, 6,

30). The police refused to correct the reports and refused to take additional reports. (*Id.* at 30). Pan also made "as many as 25 complaints" to the CCRB. (*Id.* at 31).

Pan alleges that Police Officer Zevelev (ID 5636) made "hate discrimination obstruction of justice, intimidation, expulsion and threats against me," but she does not include any details of these threats or when they occurred. (*Id.* at 6). She claims that "[she] encountered their Asian hatred for me. And [they] threatened me that I had to leave quickly, and if I didn't, they would call an ambulance to take me to an insane asylum." (*Id.* at 30). A "black woman wearing glasses and with a large black birthmark on the left side of her face seriously obstructed judicial justice, repeatedly preventing the filing of detailed and accurate reports. She also engaged in hate speech against Asian Americans and repeatedly prevented the correction of erroneous reports." (*Id.* at 14). Some reports "framed [Plaintiff] for harassment," which led to Plaintiff's "illegal arrest" and detention on five occasions. (*Id.* at 4, 6, 29–30). Plaintiff asserts that the officers' failures constituted "obstruction of justice." (*Id.* at 31). In addition to the aforementioned NYPD officers, Pan names Officers Cunningham (ID 26360), Daniel (ID 21445), Castillo (ID 25982), Rosado (ID 18688), and Fulcher (ID 18820)—she does not ascribe any specific action or inaction to any of these individuals. (*Id.* at 31).

On September 11, 2025, Plaintiff filed a CCRB complaint against Police Officers Colvil (ID 5146), Morales (ID 1933), Aiello (ID 202211 or 20221), and Zevelev (ID 5636). (*Id.* at 31). Pan further alleges that Officers Daniel, Colvil, Morales, and Cunningham failed to file or correct police reports at her request. (*Id.* at 4).

Plaintiff also names the City of New York as a defendant and alleges unspecified "unconstitutional policies or customs." (*Id.* at 17). She asserts claims under 42 U.S.C.

§§ 1983 and 1985(3). (*Id.* at 16). She seeks $3 million in damages and $400,000 in compensation for stolen personal property and medical expenses. (*Id.* at 20, 33).

On December 8, 2025, Pan filed a letter requesting "that the case be accepted, formally tried, fairly and justly handled and that the defendant be severely punished." (ECF No. 4 at 3). The letter includes two exhibits: an August 4, 2025, judgment of the Housing Court and an August 29, 2025, notice of eviction. (*Id.* at 4–5).

## LEGAL STANDARD

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will be considered plausible on its face "when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, 28 U.S.C. § 1915(e)(2)(B) requires a district court to dismiss a case filed *in forma pauperis* if the court determines that the action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Claims for deprivations of constitutional rights may be brought under the Civil Rights Acts as codified at 42 U.S.C. § 1983. To bring a claim under section 1983, the plaintiff must show that the conduct was "committed by a person acting under color of state law" and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). A plaintiff seeking to recover money damages must also establish that each named defendant was personally involved in the alleged wrongdoing or misconduct. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A municipality can be liable under section 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Cash v. County. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012) ("[T]o establish municipal liability under § 1983, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." (citation and internal quotation marks omitted)). Proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). The New York City Charter provides that all suits must be brought against the City of New York, not the individual agencies.

N.Y.C. Admin. Code & Charter Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. Feb. 6, 2007).

Here, Pan asserts section 1983 claims against the City of New York and two of its agencies, the NYPD and the Office of the Corporation Counsel. However, Plaintiff does not allege any unconstitutional policy or custom attributable to the City of New York. Therefore, Plaintiff's section 1983 claims against the City of New York and its agencies are dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Pan identifies multiple police officers whom she alleges committed "obstruction of justice" by not filing or correcting police reports at her request. These allegations fail to establish a violation of any constitutional rights. Police officers are charged with acting for the benefit of the public, and not for the benefit of private citizens, who have no enforceable entitlement to particular outcomes. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 760, 765 (2005) (noting the "well established tradition of police discretion" and that "serving of public rather than private ends is the normal course of the criminal law."). "[P]olice officers have no affirmative duty to investigate complaints, as the government and its agents are under no general duty to provide public services or protection to individual citizens." *Morris v. City of N.Y.*, No. 14-CV-1749 (JG)(LB), 2015 WL 1914906, at *5 (E.D.N.Y. Apr. 27, 2015) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 197 (1989)). Accordingly, Plaintiff's claims about police

officers' responses to her complaints are dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Pan, however, does allege that she was illegally and violently arrested. The only officers she identifies in connection with these arrests are (1) Officer Luo (ID 12820) and (2) Luo's partner, "a Spanish female police officer" who arrested her on August 20, 2023; (3) a "Spanish male" officer who arrested her on May 16, 2024; and (4) Officer Livingston (ID 12987) who arrested her on May 18, 2024. Her claims may proceed against the named officers. Accordingly, the Clerk of Court is directed to amend the caption of the action to include Police Officers Luo (ID 12820) and Livingston (ID 12987). Should any additional officers be identified during discovery, the caption may be further amended.

## CONCLUSION

For the reasons set forth above, Plaintiff's request to proceed *in forma pauperis* is granted. The claims against the City of New York, Corporation Counsel, and the New York City Police Department are dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The claims against Officers Luo and Livingston proceed.

The Clerk of Court is directed to amend the caption of the action to include Police Officers Luo and Livingston as defendants and to issue summons against those defendants. The United States Marshals Service is directed to serve copies of the complaint and the summons on defendants Luo and Livingston. The Clerk of Court is requested to send a courtesy copy of this Order to the Special Federal Litigation Division of the Corporation Counsel and to mail a copy of this Order to Plaintiff.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

/s/ Ramón E. Reyes, Jr.
_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: December 15, 2025
        Brooklyn, New York